# RICHARD BARRY *v.* BOARD OF EDUCATION OF THE CITY OF NEW BRITAIN
## (AC 32201)

DiPentima, C. J., and Alvord and Bishop, Js.

Argued October 11—officially released December 27, 2011

*Leon M. Rosenblatt,* for the appellant (plaintiff).

*Michael P. McKeon,* for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Richard Barry, appeals from the summary judgment rendered by the trial court in favor of the defendant, the board of education of the city of New Britain, on the plaintiff's claims of breach of the parties' settlement agreement and breach of the parties' employment contract. On appeal, the plaintiff argues that the court improperly determined that he was collaterally estopped from bringing these claims.[1]

---

[1] In addition, the plaintiff argues that the court improperly rendered summary judgment as to the aforementioned claims because there were genuine issues of material fact to be adjudicated by a fact finder. Because we conclude that the doctrine of collateral estoppel applies to all of the claims, we need not reach the claim that the existence of genuine issues of material fact should have precluded summary judgment.

Lastly, the plaintiff argues that the court improperly determined that the doctrine of res judicata barred him from litigating his claims. The plaintiff argues that res judicata is inapplicable because the United States District Court for the District of Connecticut dismissed his claims without prejudice in the prior federal action, thereby vacating any judgment as to those claims. Because "[a]pplication of the doctrine of res judicata requires that there be a previous judgment on the merits;" *Legassey* v. *Shulansky,* 28 Conn. App. 653, 658, 611 A.2d 930 (1992); we are inclined to agree with the plaintiff that res judicata is inapplicable in the present action. See *Beccia* v. *Water-*

We disagree and accordingly affirm the judgment of the trial court.

The following factual and procedural history is relevant to our consideration of the plaintiff's claims.[2] In 1989, the plaintiff was hired by the defendant as the personnel manager in the human resources department and continued in that position until 1996 when he was replaced and reassigned to the position of associate personnel manager. Thereafter, the plaintiff filed a federal age discrimination action against the defendant, which settled on June 25, 2001, pursuant to a release and settlement agreement (settlement agreement) between the parties. As a result of the settlement of this first action, the plaintiff was reinstated as personnel manager. Four days after finalizing the settlement agreement, by which the plaintiff released all claims against the defendant and which included provisions pertinent to his employment, the plaintiff entered into an employment contract with the defendant, which included a provision that the plaintiff could be terminated for good and just cause.[3]

After the settlement, a new superintendent of schools (superintendent) was appointed. To facilitate her assessment of the school system, she arranged an outside audit of the organization. The audit questioned the efficiency of the human resources department, attributing several problematic aspects to its organizational structure. The audit specifically questioned the efficacy of having two administrative positions—an executive

_bury_, 192 Conn. 127, 132, 470 A.2d 1202 (1984); _DeLaurentis_ v. _New Haven_, 220 Conn. 225, 240–41, 597 A.2d 807 (1991).

[2] The factual and procedural history is derived from the United States District Court's decision. See _Barry_ v. _Board of Education_, United States District Court, Docket No. 3:05CV 00328 (PCD), 2006 WL 3791388 (D. Conn. December 22, 2006), aff'd, 300 Fed. Appx. 113 (2d Cir. 2008).

[3] The plaintiff disputes that the settlement agreement was executed prior to the employment contract. Because this alleged factual discrepancy does not alter our analysis or conclusion, we need not address this argument.

director as well as a personnel manager. After the superintendent and her assistants consulted with subordinate supervisors on details of their perceived budgetary needs, the school administration prepared a budget for the 2004–2005 fiscal year and submitted it to the defendant for review. This first budget proposal included funding for the plaintiff's position. The defendant recommended the proposal to the board of finance, which, in turn, forwarded to the mayor its recommendation for a reduction of the administration's submission by $5.48 million. In response, the administration began to consider ways to reduce the budget. Its preliminary considerations included the elimination of several staff positions, one of which was the plaintiff's position. The mayor adopted the board of finance's budget proposal submission, but New Britain's common council overrode the mayor's decision. After a public hearing, the administration's budget ultimately was reduced by $3.4 million. As a consequence of this reduction, members of the school's administration met with a property owners association, students' parents, and members of the staff to hear their respective views of what positions and programs should be retained and those that could be removed from the final budget. The administration then presented those views to the defendant.

As required, the defendant adopted a budget for the 2004–2005 fiscal year, which was within the amount authorized by the common council, and which, among other reductions, eliminated a total of forty-eight positions including certain teachers, paraprofessionals, clerical, custodial, maintenance, nursing and security personnel and the plaintiff's position. After the superintendent determined that the budget constraints created just cause for terminating those positions that were eliminated, she provided written notice to the plaintiff on June 21, 2004, that his position had been eliminated

as a result of budget cuts. On July 31, 2004, the superintendent gave the plaintiff written notice that his dismissal was under consideration. In response, the plaintiff and his attorney attended a hearing conducted by the defendant to review its termination, which the defendant affirmed. The human resources department thereafter was reorganized, and the plaintiff's position was not refilled.

On or about June 1, 2004, the director of human resources left and was replaced temporarily by a seventy-three year old man. The plaintiff was interviewed, along with other applicants, for the permanent position. Because none of the applicants was deemed a suitable match for the position, the superintendent recommended that the position not be filled at that time. The position later was filled, following an employment posting, by an individual who was not among the original applicants.[4]

On February 24, 2005, the plaintiff filed a second federal action against the defendant, alleging discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and breach of his employment contract and settlement agreement. On May 12, 2006, the defendant filed a motion for summary judgment, and the plaintiff subsequently filed a motion for partial summary judgment. On December 22, 2006, the United States District Court granted the defendant's motion for summary judgment as to all claims and denied the plaintiff's motion for partial summary judgment. Thereafter, the plaintiff filed a notice of appeal to the United States Court of Appeals

---

[4] The United States Court of Appeals for the Second Circuit noted that the individual who was eventually hired for the position of director had a law degree, an asset that the defendant perceived to represent the likelihood of a financial savings and an increase in office efficiency. At any relevant time, the plaintiff has not had a law degree. See *Barry* v. *Board of Education*, 300 Fed. Appx. 113, 114 (2d Cir. 2008).

for the Second Circuit. On March 30, 2007, the plaintiff filed a motion with the District Court, requesting that it retroactively decline to exercise pendent jurisdiction over the plaintiff's two state claims, thereby vacating its prior disposition of them. The District Court granted the plaintiff's motion and dismissed the state claims without prejudice so that the plaintiff could pursue them in state court.

On June 7, 2007, the plaintiff filed this action in state court against the defendant, alleging that the defendant breached the settlement agreement and the employment contract. The defendant filed an answer and special defenses but did not raise the defense of collateral estoppel. On April 3, 2008, however, the defendant filed a motion for summary judgment, claiming as to each count, inter alia, that there was no genuine issue of material fact. The defendant also claimed that the state action should be barred by the doctrines of res judicata and collateral estoppel.[5] On November 3, 2008, the same day as the hearing on the motion for summary judgment, the plaintiff filed a brief in which he argued that the defendant had waived its preclusion arguments by failing to raise them as special defenses. During oral argument, the court concluded that it was appropriate to stay further proceedings in the matter pending the Second Circuit's decision with regard to the plaintiff's federal appeal. On November 24, 2008, the Second Circuit affirmed the District Court's judgment granting the defendant's motion for summary judgment. *Barry* v. *Board of Education*, 300 Fed. Appx. 113 (2d Cir. 2008). On December 31, 2008, the defendant filed a motion to amend its special defenses in the state action to include the doctrines of res judicata and collateral estoppel, to

---

[5] The defendant's claims regarding res judicata and collateral estoppel were not raised in its initial memorandum of law in support of its motion for summary judgment but were later raised in its supplemental memorandum of law, which was filed on October 16, 2008.

which the plaintiff did not formally object. On April 13, 2010, the trial court granted the defendant's motion for summary judgment on the basis that there were no genuine issues of material fact and that the plaintiff's claims were barred by the doctrines of res judicata and collateral estoppel. This appeal followed.

On appeal, the plaintiff contends that the court improperly determined that his claims of breach of the employment contract and breach of the settlement agreement were barred by the doctrine of collateral estoppel. The trial court found that the plaintiff was collaterally estopped from asserting these claims on the basis of the District Court's disposition of the plaintiff's federal claims under the ADEA. According to the plaintiff, the trial court should have relied on the Second Circuit's decision in evaluating the applicability of the doctrine of collateral estoppel. The plaintiff argues that because the District Court dismissed the state claims without prejudice, the facts supporting the plaintiff's state claims were neither affirmed by nor necessary to the Second Circuit's affirmance of the District Court's decision. We disagree.

Before turning to the merits of the plaintiff's appeal, we note the standard that governs our review of the trial court's granting of a motion for summary judgment. Practice Book § 17-49 provides that summary judgment is appropriate "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Our Supreme Court has explained that "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.)

*Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, 298 Conn. 852, 862, 9 A.3d 698 (2010).

"Whether the . . . doctrine of collateral estoppel [is applicable] is a question of law for which our review is plenary. . . . Collateral estoppel, or issue preclusion, means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . [Thus] [i]ssue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. . . . The doctrine of collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . .

"Before collateral estoppel applies . . . there must be an identity of issues between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." (Citations omitted; internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 100 Conn. App. 94, 99, 917 A.2d 555, cert. denied, 282 Conn. 914, 924 A.2d 140 (2007). "Collateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party." *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 303, 596 A.2d 414 (1991).

Generally, when the Second Circuit makes its own assessment of the parties' claims and undertakes independently to explain its reasoning, which is not identical to that of the District Court, the relevant decision for purposes of res judicata and collateral estoppel is that of the Second Circuit. *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 39, 694 A.2d 1246 (1997). In this

case, however, because the Second Circuit adopted the factual findings of the District Court and issued a summary order;[6] *Barry* v. *Board of Education*, supra, 300 Fed. Appx. 113; we rely on the opinions of both the District Court and the Second Circuit in reviewing the claim of collateral estoppel. See *Upjohn Co.* v. *Planning & Zoning Commission*, 224 Conn. 82, 93, 616 A.2d 786 (1992); see also *Milford* v. *Andresakis*, 52 Conn. App. 454, 458 n.7, 726 A.2d 1170, cert. denied, 248 Conn. 922, 733 A.2d 845 (1999).

In order to apply the doctrine of collateral estoppel, we must first conclude that there is an identity of issues between the prior proceeding and the case at hand. *Terracino* v. *Buzzi*, 121 Conn App. 846, 853, 1 A.3d 115 (2010). We begin our analysis, therefore, by determining whether the issues actually decided by the District Court and later affirmed by the Second Circuit were identical to those underlying the plaintiff's state claims in the present matter. After thoroughly reviewing the record, we are persuaded that the issues are identical and, therefore, warrant the application of collateral estoppel. The District Court and the Second Circuit made it amply clear that both courts fully considered and determined, adversely to the plaintiff, the issue of whether his discharge was a pretext[7] for underlying discriminatory or retaliatory motives. This is the same issue that the plaintiff now attempts to relitigate in state court, even though it is cast as common-law contract claims. The identity of the issues in these two actions is further evidenced by the plaintiff's assertion of nearly

---

[6] Local Rule 32.1.1 (a) of the Second Circuit provides that "[r]ulings by summary order do not have precedential effect." The reason for this rule is that summary orders typically do not contain a sufficiently detailed factual background for purposes of comparison with subsequent cases. See *Jackler* v. *Byrne*, 658 F.3d 225, 244 (2d Cir. 2011).

[7] In both the federal and state complaints, the plaintiff alleges that he was terminated "under the pretext that the defendant was trying to save money."

identical factual allegations in both this state action and the federal litigation.[8]

Having established that the factual allegations asserted by the plaintiff in the present case and the previous federal litigation are identical, we now turn to the plaintiff's claim that the court's finding of collateral estoppel was improper because resolution of the question of whether he was terminated on the basis of a pretext for underlying discriminatory or retaliatory motives was not necessary to the Second Circuit's affirmance of the District Court's decision. The record does not support the plaintiff's position. The District Court found that the defendant offered evidence showing good and just cause for terminating the plaintiff. It noted that "[b]ecause the [defendant] has articulated legitimate, nondiscriminatory reasons for the elimination of [the] [p]laintiff's position and for its refusal to rehire [the] [p]laintiff, the burden shifts back to [the] [p]laintiff to prove by a preponderance of evidence that [the] [d]efendant's proffered reasons are a pretext for discrimination. . . . [The] [p]laintiff has offered no evidence to contradict [the] [d]efendant's legitimate, nondiscriminatory reasons." (Citations omitted.) *Barry* v. *Board of Education*, United States District Court, Docket No. 3:05CV 00328 (PCD), 2006 WL 3791388, *5 (D. Conn. December 22, 2006), aff'd, 300 Fed. Appx. 113 (2d Cir. 2008). This finding was necessary to the District Court's conclusion that the plaintiff failed to prove his claim that the defendant's articulated rationale for terminating him was a pretext for underlying discriminatory or retaliatory motives.

The Second Circuit, in its summary order, agreed with and necessarily relied on the factual findings of

___

[8] Although the plaintiff submitted three additional affidavits to the trial court in support of his state claims, which were not before the District Court or the Second Circuit, these documents do not negate the existence of collateral estoppel. See *Lyon* v. *Jones*, 291 Conn. 384, 409–10, 968 A.2d 416 (2009).

the District Court,[9] which is evidenced by its conclusion that the plaintiff could not "establish pretext for either of his claims"; *Barry* v. *Board of Education,* supra, 300 Fed. Appx. 114; and that the plaintiff did not demonstrate that "the proffered explanations for terminating his position . . . were merely pretextual and that the actual motivations more likely than not were discriminatory . . . ." (Internal quotation marks omitted.) Id. The Second Circuit's reference to additional supporting facts in its affirmance of the judgment; id.; does not negate its reliance on the District Court's findings.

Moreover, resolution of the issue of whether the plaintiff was terminated on the basis of a pretext with underlying discriminatory or retaliatory motives would be necessary for recovery on the complaint in issue. Both counts of the plaintiff's complaint are based on the following allegations: (1) the plaintiff was terminated under the pretext that "the defendant was trying to save money;" and (2) the defendant's alleged breaches of both the employment contract and the settlement agreement were "wanton," "malicious" and based on "bad motives." The complaint, therefore, is premised on the assertion that the defendant's termination of the plaintiff was based on a pretext with underlying discriminatory motives. The District Court already found, and the Second Circuit affirmed, that the plaintiff failed to prove that he was terminated on the basis of a pretext with underlying discriminatory motives. This issue, therefore, is foreclosed. Accordingly, we conclude that the plaintiff's claims are barred by the doctrine of collateral estoppel.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] The Second Circuit did not outline the factual and procedural history that was previously articulated in the District Court's decision. Rather, it noted, "[w]e assume the parties' familiarity with the underlying facts and procedural history of this case." *Barry* v. *Board of Education,* supra, 300 Fed. Appx. 114. The Second Circuit also stated that it reviewed the " 'record as a whole' " and made its findings thereon. Id.